JAMES BONINI
CLERK

**IN THE FEDERAL DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO** 2010 NOV 22 A 11: 22

**COLUMBUS DIVISION**

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
EAST DIV COLUMBUS

|  |  |
|---|---|
| United States of America, ex rel Alan W. Moore and Mark Johnson | CASE NO.: **2:10 cv 1051** |
| Relators, | **COMPLAINT** |
| vs. | (False Claims Act, 31 U.S.C. §§3729-3733) |
| C & N Industrial Contractors, Inc., and Kapp Construction Company, Incorporated | **FILED IN CAMERA AND UNDER SEAL** |
| Defendants. | **JUDGE GRAHAM** **MAGISTRATE JUDGE KING** |

**INTRODUCTION**

**COME NOW** Relators Alan W. Moore and Mark Johnson complaining of the named Defendants above to fully disclose the facts pertaining to them and the fraud they perpetrated upon the United States of America.

This action is brought pursuant to the qui tam provisions of the Civil False Claims Act ("FCA") at 31 U.S.C. § 3730 by these Relators on behalf of the United States Government, to recover all damages and applicable civil monetary penalties arising from the actions of Defendants C & N Industrial Contractors, Incorporated ("C & N"), and Kapp Construction Incorporated ("Kapp"), both knowingly along with numerous relevant subcontractors for:

**1) Submitting or causing to be submitted false or fraudulent statements or claims to the United States Government which were subsequently paid;**

1

**2) Making, using, and/or causing to be made or used, false records and material statements to get false and fraudulent claims paid by the United States Government; and**

**3) Conspiring with each other and their relevant subcontractors to defraud the United States Government by getting false or fraudulent claims allowed and/or paid by the United States Government.**

Defendants C & N and Kapp provided construction development, project management, general contracting and construction services under federally-funded contracts to renovate and expand the Heritage Center of Clark County ("Heritage Center Project") in Springfield, Ohio, through the federal Departments of Housing and Urban Development ("HUD") and Transportation ("DOT"). These Defendants knowingly and willfully failed to comply with the requirements of its HUD and DOT-funded contracts, including those requiring compliance with all applicable federal, state and local law thereby violating the FCA.

## THE PARTIES

1.  Relator Alan W. Moore was a former Organizer for the International Union of Operating Engineers, Local 18 and is one of the Relators in the false claim case captioned *United States of America, ex rel and Alan W. Moore and Teresa Berkshire v. Pennrose Properties, LLC, Kapp Construction, Incorporated, and the International Union of Operating Engineers, Local 18*. Relator Moore, in an effort to track the use of illegal immigrant workers, identified Kapp, New Concepts and other companies involved in the project that resulted in the above-identified case. Mr. Moore was a resident of Clark County during 2004 and 2005 residing in Medway, Ohio. As such, he was aware of the

growth of Kapp Construction, Incorporated and the company's involvement in the Springfield, Ohio Heritage Center Project.

2.      Relator Mark Johnson is a resident of the City of Springfield, Clark County, Ohio and was a member in good standing of the International Union of Operating Engineers, Local 18 until 2009. He has been an active citizen of the City of Springfield and has previously investigated labor projects within the city.

3.      Defendant C & N Industrial Corporation, Inc., is an Ohio Corporation, with a corporate office located at 1203 West Main Street Springfield, OH, 45504. **Its Registered Agent for service of process is James H. Lagos, 1203 West Main Street, Springfield, Ohio 45504.**

4.      Defendant Kapp Construction, Inc. is an Ohio corporation, with a corporate office located at 329 Mount Vernon Avenue, Springfield, Ohio, 45503-0629. **Its Registered Agent for service of process is Walter A. Wildman at One South Limestone, Springfield, OH 45501.**

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and specific FCA jurisdiction under 31 U.S.C. § 3732(a).

6.      This Court has personal jurisdiction over these Defendants pursuant to 31 U.S.C. § 3732(a), providing that:

> **"[a]ny action under section 3730 may be brought in any judicial district in which the defendant, or in the case of multiple defendants, any one defendant can be found, resides, transacts business or in which any act proscribed by section 3729 occurred."**

7.     31 U.S.C. § 3732(a) also authorizes nationwide service of process, these Defendants, during the relevant period residing in and transacting business in the Southern District of Ohio.

8.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants conducted business in the District and numerous acts prohibited by 31 U.S.C. § 3729 occurred in this District.

9.     Defendants are qualified to conduct and have conducted business in this District. Many, if not all, of the acts and transactions providing the basis for this action occurred in this Judicial District and all of the property that is the subject of this litigation is in this Judicial District.  Accordingly, venue is appropriate in the Southern District of Ohio under 31 U.S.C. § 3732(a) and 28 U.S.C. 1391(b)(2).

10.     Relators' claims and this Complaint are not based on prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in any Government Accountability Office ("GAO') or Auditor General's report, hearing, audit, investigation or from the news media as enumerated in 31 U.S.C. § 3730(e).  Relators Moore and Johnson are the original source of this information and all of the information contained herein was their work product.

11.     Prior to filing this action, Relators have voluntarily disclosed to appropriate governmental authorities, the U.S. Attorney's Office for the Southern District of Ohio (Andrew Malek, Esq.) all of the material evidence upon which this action is based.

## PRIOR DISCLOSURE

12.     To the extent that there has been a public disclosure unknown to these Relators, they are original sources under 31 U.S.C. § 3730(e)(4).  Relators, as individuals, have

direct and independent knowledge of the information on which the allegations are based. Relators are knowledgeable about the relevant operations of these Defendants and Clark County with regards to the Heritage Center Project construction work and the workers employed at the construction site and are the original sources of the facts upon which these False Claims Act allegations are based as defined in 31 U.S.C. § 3730(c)(4)(B).

## FACTUAL AND LEGAL OVERVIEW

13.     This action arises from false statements, records, and claims made, used and presented by the Defendants, their agents, employees, subcontractors and additional conspirators, in direct violation of the FCA, 31 U.S.C. §§ 3729-3733, as amended.

14.     Defendants C&N and Kapp, directly and through their subcontractors, agents, and representatives, intentionally and knowingly submitted or caused to be submitted, false claims for payment under its contracts without disclosing their non-compliance with the Davis-Bacon Act, the Contract Work Hours and Safety Standards Act and other laws material to HUD and DOT funding of the renovation of and addition to the Heritage Center in Springfield, Ohio, in violation of the FCA.

15.     The False Claims Act ("The Act"), 31 U.S.C. § 3729 *et seq*, was originally enacted during the Civil War in 1863. It has since been substantially amended to enhance the government's ability to recover losses sustained as a result of fraud against it and to provide a private cause of action for individuals to bring a claim on behalf of the United States of America. 31 U.S.C. § 3729 provides:

    **(a)    Liability for Certain Acts--Any person who--**

    **(1)    knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;**

(2)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3)     conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(4)     has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5)     authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the delivers the receipt without completely knowing that the information on the receipt is true;

(6)     knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

(7)     knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustained because of the act of that person, except that if the Court finds that--

(A)     the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;

(B)     such person fully cooperated with any Government investigation of such violation; and

(C)     at the time such person furnished the United States with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation; the court may assess not less than 2 times the amount of damages which the Government sustained because of the act of the person. A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

(b)     Knowing and Knowingly Defined--For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information--

(1)     has actual knowledge of the information;

6

        **(2)**     **acts in deliberate ignorance of the truth or falsity of the information; or**

        **(3)**     **acts in reckless disregard of the truth or falsity of the information, no proof of specific intent to defraud is required.**

**(c)**      **Claim Defined--For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or party which is requested or demanded.**

16.     The Act further provides at 31 U.S.C. § 3802 that:

**(a)(1)  Any person who makes, presents, or submits, or causes to be made, presented, or submitted, a claim that the person knows or has reason to know--**

        **(A)**     **is false, fictitious, or fraudulent;**

        **(B)**     **includes or is supported by any written statement which asserts a material fact which is false, fictitious, or fraudulent;**

        **(C)**     **includes or is supported by any written statement that--**

        **(i)**     **omits a material fact;**

        **(ii)**     **is false, fictitious, or fraudulent as a result of such omission; and**

        **(iii)**     **is a statement in which the person making, presenting, or submitting such statement has a duty to include such material fact; OR**

        **(D)**     **is for payment for the provision of property or services which the person has not provided as claimed shall be subject to, in addition to any other remedy that may be prescribed by law, a civil penalty of not more than $5,000 for each such claim. Except as provided in paragraph (3) of this subsection, such person shall also be subject to an assessment, in lieu of damages sustained by the United States because of such claim, of not more than twice the amount of such claim, or the portion of such claim, or the portion of such claim, which is determined under this chapter to be in violation of the preceding sentence.**

        **(2)**     **Any person who makes, presents, or submits, or causes to be made, presented, or submitted, a written statement that--**

7

(A)     the person knows or has reason to know--

(i)      asserts a material fact which is false, fictitious, or fraudulent; or

(ii)(I)    omits a material fact; and

(II)     is false, fictitious, or fraudulent as a result of such omission;

(B)     in the case of a statement described in clause (ii) of subparagraph
(A), is a statement in which the person making, presenting, or submitting such statement has a duty to include such material fact; and

(C)     contains or is accompanied by an express certification or affirmation of the truthfulness and accuracy of the contents of the statement, shall be subject to, in addition to any other remedy that may be prescribed by law, a civil penalty of not more than $5,000 for each such statement...

17.     The Act at 31 U.S.C. § 3830(b) provides:

**Civil actions for false claims**

(b)     **Actions by private persons.--**

(1)     A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2)     A copy of the complaint and written disclosure of the substantially all material evidence and information the person possesses shall be served on the Government pursuant to rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may
may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3)     The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains

under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

(4)    Before the expiration of the 60 day period or any extensions obtained under paragraph (3), the Government shall--

(A)    proceed with the action, in which case the action shall be conducted by the Government; or

(B)    notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

(5)    When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

18.    The Davis Bacon Act requires contractors with the Government to pay workers prevailing wages, without deduction and without exception and the contractor must also certify to the Government that it pays all employees prevailing wages. Specifically, the Davis-Bacon Act, 40 U.S.C. § 3142 provides:

**Rate of wages for laborers and mechanics**

(a) Application.--The advertised specifications for every contract in excess of $2,000, to which the Federal Government or the District of Columbia is a party, for construction, alteration, or repair, including painting and decorating, of public building and public works of the Government or the District of Columbia that are located in a State or the District of Columbia and which requires or involves the employment of mechanics or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics.

(b) Based on prevailing wages.--The minimum wages shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a similar to the contract work in the civil subdivision of the

State in which the work is to be performed, or in the District of Columbia if the work is to be performed there.

(c) **Stipulations required in contract.**--Every contract based upon the specifications referred to in subsection (a) must contain stipulations that--

(1)     the contractor or subcontractors shall pay all mechanics and laborers employed directly on the site of the work, unconditionally and at least once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment, computed at wage rates not less than those stated in the advertised specifications, regardless of any contractual relationship which may be alleged to exist between the subcontractors and the laborers and mechanics;

(2)     the contractor will post the scale of wages to be paid in a prominent and easily accessible place at the site of the work; and

(3)     there may be withheld from the contractor so much of the accrued payments as the contracting officer considers necessary to pay to laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by the laborers and mechanics and not refunded to the contractor or subcontractors or their agents.

19.     Community Block Development Grants are an essential part of HUD's efforts to transform communities by working in partnership with other agencies, local governments, nonprofit organizations, and private business to leverage support and resources. The Community Development Block Grant ("CDBG") program is a flexible program that provides communities with resources to address a wide range of unique community development needs. Beginning in 1974, the CDBG program is one of the longest continuously run programs at HUD. The CDBG program provides annual grants on a formula basis to 1209 general units of local government and States.

20.     HUD requires that all contracts and subcontracts contain certain contractual terms mandating compliance with important federal employment laws, including, but not limited to, in relevant part:  NEED A CITE – WHERE IS THIS FROM

> **(4) Compliance with the Copeland "Anti-Kickback" Act (18 U.S.C. § 874) as supplemented in Department of Labor regulations (29 CFR Part 3). ( All contracts and subgrants for construction or repair);**
> **(5) Compliance with Davis-Bacon Act (40 U.S.C. § 276(a) to 276(a)-(7) as supplemented by Department of Labor regulations (29 FR Part 5). (Construction contracts in excess of $2,000 awarded by grantees and subgrantees when required by Federal grant program legislation);**
> **(6)  Compliance with Sections 103 and 107  of the Contract Work Hours and Safety Standards Act (40 U.S.C. §§ 327-330) as supplemented by Department of Labor Regulations (29 CFR Part 5). (Construction contracts awarded by grantees and subgrantees in excess of $2,000, and in excess of $2,500 for other contracts which involve the employment of mechanics or laborers.) 24 CFR § 85.36(i)**

21.     Compliance with the FCA as above and the labor-related provisions of HUD grants, contracts, subcontracts, and subgrants are material and mandatory terms and prerequisite to the United States Government's authorizing payment.  The applicable provision in 29 C.F.R. § 5.6(a)(1) states:

> **No payment, allowance, grant, loan or guarantee of funds shall be approved by the federal agency unless the agency insures that the clauses required by § 5.5 and the appropriate wage determination of the Secretary of Labor are contained in such contracts.  Furthermore, no payment, advance, grant, loan or guarantee of funds shall be approved by the federal agency after the beginning of construction unless there is on file with the agency a certification by the contractor that the contractor and its subcontractors have complied with the provisions of § 5.5 or unless there is on file with the agency a certification by the contractor that there is a substantial dispute with respect to the required provisions.**

22.     Based on the foregoing Acts, Relator seeks to recover damages, civil penalties, and attorneys' fees for Defendants' multiple submissions of false claims to the Government, as set forth herein.

11

## THE GOVERNMENT CONTRACT

23.     This action arises from false statements, records, and claims made, used, and presented by Defendants and their agents, employees, subcontractors and additional co-conspirators involved in the Heritage Center Project, in violation of the FCA, 31 U.S.C. §§ 3729-3733., as amended.

24.     The Heritage Center project spanned over the period of 1997 through late 2004 and involved three continuing phases to the renovation of the old Heritage Center, a historic building and the addition of an annex to the original historic structure known as the Heritage Center.

25.     The General Contractor on Phases I and III was Defendant C & N. The second phase was the addition of an annex to the original structure, Defendant Kapp the General Contractor on Phase II of the project.  The total Contract value initially awarded by the Clark County Commissioners to Kapp for Phase II of the Heritage Center Project was One Million Forty Eight Thousand Seven Hundred Thirty Nine Dollars ($1,048,739.00).

26.     Numerous contractors bid the initial project and Clark County opened sealed bids on June 9, 1999. In compliance with the laws in the State of Ohio, when the entire cost of the project exceeds $50,000, the State is required by applicable law to solicit separate bids for, at least the general trades including, but not necessarily limited to, plumbing, electrical and HVAC work on a project.  The State also has the option of soliciting a combined bid for all work on a project that exceeds $50,000 and may award a single contract for the entire project, or the State may solicit bids which combine one or more of the branches of work, awarding the contract to the lowest responsive and responsible bidder.  The State may also assign all or any portion of its interest in a Contract with one

12

or more of the successful bidders as an agreed condition for an award of the contract for the amount of the respective bid.  Such assignment may include, without limitation, the duty to schedule, coordinate and administer the Contract.

27.    The lead contractor or General Contractor for each construction phase was responsible for scheduling the project, coordinating the Contractors, and providing other services identified in the Contract Documents.  As is common, when the cost estimate of a project is $500,000 or more, critical path scheduling methods were provided for the Heritage Center Project.  Where individual Contracts for specific services were let, those contractors had the specific duty to cooperate and coordinate with the General Contractor on the project to minimize the interference, disruption, hindrance or delay of any work on the project.

28.    The winning bidders agreed that the bid amount would cover all expenses which may become due from the State resulting from their interference, disruption, hindrance or delay caused between Contractors, their agents and employees.

29.    The six winning bidders of Contracts for Phase I of the Heritage Center of Clark County project were as follows:

> a.  **C & N Industrial Contractors, Inc. (General) with a total Contract of $2,808,450.00;**
> b.  **C & N Industrial Contractors, Inc. (Masonry) with a total Contract of $251,926.50;**
> c.  **Prism Electrical with a total Contract of $1,024,000.00;**
> d.  **Applied Mechanical with a total Contract of $1,146,874.00;**
> e.  **The Tradesman Group with a total Contract of 310,132.00;**
> f.  **Sonitrol/Protection One with a total Contract of $94,627.00**

30.    On or about March 31, 2000, EXPLUS Incorporated was awarded a total Contract in the amount of $2,027,542.00 for the fabrication and installation of exhibits at the

Heritage Center Project. The Component Cost Allocation of the Contract was funded with a federally funded Ohio DOT ("ODOT") grant and local funding. The ODOT Grant was in actuality a DOT grant which ODOT administered in the amount of $518,000.00. The second federal source of funds was an Economic Development Grant from the Department of Housing and Urban Development in the amount of $500,000.00.

## Violation of express provisions of contract terms

31.     Section 1.1.1 of the Contract executed by Defendants C & N and Kapp for their respective phases of the Heritage Center project indicated as follows:

> **"The Contractor shall pay the prevailing wage rates of the Project locality, as determined by the Ohio Bureau of Employment Services, Wage and Hour Division to laborers and mechanics performing Work on the Project."**

32.     The Contract required all workers must be paid the prevailing wage rate, according to their job classifications in accordance with the Davis-Bacon Act. HUD took affirmative steps to ensure that all grantees, contractors, and subcontractors were fully aware of the applicability of the Copeland Anti-Kickback Act and Davis-Bacon Act wage requirements by requiring a posting of applicable wage determinations for various classifications of workers employed at the Heritage Center.

33.     Wage determinations were included as an express condition of the contract, as determined by the Department of Labor and Clark County officials provided wage determinations for each classification of worker employed at the Heritage Center with the original bid package to all respective bidders for all phases of construction at the Heritage Center.

14

34.    These wage determinations represent the "prevailing wage" for each classification of worker and are the wages C&N, Kapp and any subcontractor, was required to pay its workers. Davis Bacon wages rates are "prevailing" minimum wage rates that contractors must pay their employees on any construction project over $2,000 to which the United States is a party. These rates are set and enforced by the U.S. Secretary of Labor. In addition, many other statutes require the use of Davis-Bacon wage rates where the U.S. is not a party but where certain federal funds are being used to wholly or partially finance construction through CDBG and HOME programs, among others. Here, Defendants did not comply with said requirements.

35.    HUD requires and directs that all "self-employed" and "independent contractor" workers also be paid in accordance with Davis-Bacon prevailing wage determinations. *HUD Labor Relations Letter LR 96-01.*

36.    Section 1.1.2. of the Contract provided:

> **"The Contractor shall comply with the provisions, duties, obligations, and is subject to the remedies and penalties of Chapter 4115, ORC, "Wages and Hours on Public Works."**

37.    As the primary contractors, these defendants were the parties under contract to the United States Government and accordingly owed a non-delegable duty to all workers on the job to ensure they were paid the prevailing wages, in accordance with the terms of the contract. The duty to pay workers prevailing wages exists regardless of whether workers are paid by the general contractor or by any subcontractor to the general contractor.

38.    Section 1.1.3. of the Contract provided:

> **"The Contractor shall submit all payroll reports in compliance with the requirements of Article 18 of the General Conditions."**

39.     Compliance with the labor related provisions of Community Block Development Grants, federally funded contracts, subgrants and subcontracts is a material and mandatory term and prerequisite to the United States government authorizing payments. The applicable provision in 29 C.F.R. § 5.6 (a)(1) (emphasis added) states:

> **No payment, advance, grant, loan, or guarantee of funds shall be approved by the Federal agency unless the agency insures that the clauses required by Section 5.5 and the appropriate determination of the Secretary of Labor are contained in such contracts. Furthermore, no payment, advance, grant, loan, or guarantee of funds shall be approved by the Federal agency after the beginning of construction unless there is on file with the agency a certification by the contractor that the contractor and its subcontractors have complied with the provisions of Section 5.5 or unless there is on file with the agency a certification by the contractor that there is a substantial dispute with respect to the required provisions.**

40.     These Defendants collectively produced false certified payroll reports on a weekly basis and caused those reports to be transmitted to the prevailing wage coordinator administering Federal funds for purposes of obtaining ongoing revenues.

41.     Defendant C & N employed Subcontractor New Concepts (Gary Durst). In addition to failing to pay the appropriate prevailing wages as prescribed by the federal government while working on the Heritage Center project, New Concepts failed to produce a single weekly payroll report during the period of March through May of 2000.

42.     The employees of New Concepts, all Hispanics, were as follows:

> **Clemente Gonzalez who is believed to be due $7,760.23;**
> **Juan Vazquez who is believed to be due $7,956.33;**
> **Julian Vasquez who is believed to be due $4,504.94;**
> **Guillermo Olivera who is believed to be due $4,701.04;**
> **Walter Sorto who is believed to be due $4,295.64;**
> **Pascual Villa who is believed to be due $3,248.87; and**
> **Manuel Rodriguez who is believed to be due $2,994.72.**

43.     The amounts indicated above for each of the New Concepts workers reflect the underpayments of Davis Bacon wage rates for their classification and the appropriate fringe amount due and owing to these individuals.


44.     In addition to failing to provide Social Security Numbers for these individuals, New Concepts and Defendant C & N, the General Contractor who employed New Concepts as its Subcontractor, failed to provide their addresses or to verify these individuals were working legally.

45.     New Concepts through its owner Gary Durst indicated a subcontractor "employee broker" provided New Concepts' employees named MSI/INS and Final Finishes and underpaid their employees over the course of the project by $35,461.77. In fact, beginning with Payroll report #15, there was no information concerning the name of the individual working, his/her job classification, address, social security number, or hours worked on this project. There were no payroll reports submitted to the Prevailing Wage Coordinator and/or to the Government by the subcontracting broker companies MSI/INS or Final Finishes identifying the workers working on the Heritage Center Project.

46.     The Prevailing Wage Coordinator was able to identify the names of the Hispanic workers supplied by Final Finishes to subcontractor New Concepts when Gary Durst of New Concepts supplied the invoices from Final Finishes. Gary Durst of New Concepts eventually provided the classification of the workers and the number of hours worked by each worker to the Prevailing Wage Coordinator. MSI/INS was the subcontractor-broker supplying workers for drywall hanging. MSI/INS was paid $5,049.00 by New Concepts.

Subcontractor MSI/INS and Final Finishes did not pay overtime to otherwise eligible employees who worked at the Heritage Center Project as required by the Contract.

47.     In addition to MSI/INS and Final Finishes, several Subcontractors failed to submit weekly certified payroll reports including, but not limited to, (1) EXPLUS, Inc.; (2) McMullen Engineering; (3) Gates Brothers Glass; (4) Kam Finishes, Turner Lighting, Otis Elevator, and C.I.R.E.S.

48.     Defendants were required to and did make wage certification statements to the Government stating all workers were paid the prevailing wage rate for their respective job classifications.  These representations were in addition to the Contractual representation C&N and Kapp made to the Government that workers would be paid the prevailing wages for their respective job classifications.  The Defendants did make false certifications and material omissions in their claims for payments on numerous occasions from the time the contract was awarded until the completion of the job.

49.     The Defendants had actual knowledge that the representations to the Government were false and they intended to deceive the Government in making these representations and to profit from them.  The Government reasonably relied on these misrepresentations. In the alternative, Defendants acted with a reckless disregard for the truth of the information created by them and contained in the representations made to the Government in the wage determinations.

50.     The Defendants profited by retaining the difference between the amounts they claim was paid to the workers and the amount that was actually paid.

51.     The misrepresentations of payments to the Government were widespread and discovery will reveal additional misrepresentations and deceptions made by Defendants to the Government.

52.     As a direct and proximate result of these misrepresentations, the Government has been damaged and has paid a higher amount for wages that were not paid to the workers.

53.     Relators have direct and personal knowledge of the true facts that Defendants did not pay the employees the prevailing wage rates as contractually required and by the provisions of the Davis-Bacon Act.  Relators received documents turned into the Prevailing Wage Coordinator for the project indicating numerous companies had not submitted certified weekly payrolls and that the Hispanic New Concept workers did not receive the prevailing wage and also developed personal knowledge of the widespread and systematic practice of failing to pay employees the prevailing wage and also direct and personal knowledge of Defendants' false representation to the Government that they did pay prevailing wages.

## Failure of Subcontractors to Register with and pay Ohio Worker Compensation Premiums and provide coverage to employee-workers

54.     These Defendants' contracts required that they comply with all applicable governmental rules and regulations.  Defendants agreed to abide by all federal, state and local laws, rules and regulations, including rules designed to control workplace safety and provide coverage to employees in the event of a job site accident.

55.     At all times relevant, the General Contractors, Defendants C & N and Kapp failed to require the subcontractors operating under their express control and direction to

maintain coverage for the benefit of potentially injured workers working at the Heritage Center Project

56.     The following contractors, subcontractors or agents thereof were non-compliant (and have never registered with Ohio Bureau of Worker's Compensation to obtain insurance coverage) with having or maintaining worker compensation insurance coverage:

> **Cires Electrical**
> **Explus, Inc.**
> **A1 Sprinkler**
> **Turner Lighting**
> **MSI/INS**
> **Final Finishes**
> **New Concepts**
> **Hemm Glass**
> **Osterfield Champion**
> **The Tradesmen Group**
> **Scarff's Nursery**

57.     The following contractors or subcontractors, or agents working at the Heritage Center Project are now non-compliant or hold inactive Ohio Bureau of Worker Compensation insurance coverage (Relators have not established whether the companies identified above maintained active insurance coverage throughout the Heritage Center Project):

> **The Traditions Group, Inc.**
> **Marysville Masonry, Inc.**
> **Millennium Builders, Inc.**
> **Southwestern Site & Utility Corp.**
> **A & B Maintenance**
> **Kam Finishes**
> **Prism Electrical Contractors, Inc**.

58.     Defendants were required to and did make certification statements to the Government stating all workers were paid in accordance with Davis-Bacon Act

requirements, which includes providing insurance coverage to workers through Ohio Bureau of Worker Compensation.  The Defendants did make false certifications and material omissions in their claims for payments on numerous occasions from the time the contract was awarded until the completion of the job.

59.      The Defendants had actual knowledge that the representations to the Government were false and they intended to deceive the Government in making these representations and to profit from them.  The Government reasonably relied on these misrepresentations. In the alternative, Defendants acted with a reckless disregard for the truth of the information created by them and contained in the representations made to the Government in the wage determinations.

60.      The Defendants profited by retaining the difference between the amounts they claim was paid to the workers under the Davis-Bacon Act exclusive of worker compensation premiums which were to have been paid and the amount that was actually paid.

61.      The misrepresentations of payments to the Government were widespread and discovery will reveal additional misrepresentations and deceptions made by Defendants to the Government.

62.      Relators have direct and personal knowledge of the true set of facts that while Defendants did pay premiums to ensure bureau of worker compensation coverage for their respective employees, Defendants failed to ensure relevant subcontractors provided their employees with this required insurance coverage.

63.      Defendants' Heritage Center Project contract required that Defendants comply with all applicable governmental rules and regulation. Defendants agreed to abide by all

21

federal, state and local laws, rules and regulations, including rules designed to control workplace safety and provide coverage to employees in the event of a job site accident.

64.     Defendants were required to and did make certification statements to the Government stating all construction workers at Heritage Center were paid and provided with fringe benefits in accordance with the Davis-Bacon Act. The Defendants did make false certifications and material omissions of facts claims for payments on numerous occasions from the time the contract was awarded until the completion of the job. The Defendants improperly withheld material facts and made material misrepresentations to the Government and these misrepresentations were false and they intended to deceive the Government in making these representations and to profit from them. The Government reasonably relied on the material omission of fact or misrepresentations in paying these Defendants.

65.     At all times relevant herein, Defendants C&N and Kapp and their principals and agents, failed to oversee the Heritage Center construction site and to ensure all subcontractors performing various construction functions or other work were in compliance with applicable federal, state, and local laws, rules and regulations.

### Failure of General Contractors to verify the immigration status and eligibility to work of subcontractor employees

66.     Under 8 U.S.C. § 1324 (a), it is unlawful for any employer to employ an individual who is an alien and not authorized to work in the United States, whether directly or pursuant to contract or subcontract.

67.     Pursuant to Executive Order 12989 of February 13, 1996 ("Economy and

Efficiency in Government Procurement through Compliance with Certain Immigration

and Naturalization Act Provisions") provides:

> **Section 1. (a) It is the policy of the executive branch in procuring goods
> and services that, to ensure the economical and efficient administration
> and completion of Federal Government contracts, contracting agencies
> should not contract with employees that have not complied with section
> 274A(a)(1)(A) and 274(a)(2) of the Immigration and Nationality Act (8
> U.S.C. § 1324a (a) (1) 1324a (a)(2) (the "INA employment provisions")
> prohibiting the unlawful employment of aliens. All discretion under this
> Executive Order shall be exercised consistent with this policy.**

68.     Subcontractors MSI/INS and Final Finishes were contracted by New Concepts to

provide the necessary drywallers to work at the Heritage Center.

69.     Furthermore, the individuals listed below were all identified to be the Hispanic

workers supplied by Final Finishes and MSI/INS to Subcontractor New Concepts. Gary

Durst of New Concepts supplied invoices from MSI/INS and Final Finishes containing

the names of the individuals identified below (identified as drywallers).

> **Clemente Gonzalez**
> **Juan Vazquez**
> **Julian Vasquez**
> **Guillermo Olivera**
> **Walter Sorto**
> **Pascual Villa**
> **Manuel Rodriguez**

70.     Relators learned of the presence of these probable illegal immigrant workers after

learning of film or video footage taken by the architect to preserve the construction

process. It was during this filming that the Hispanic workers bolted from scaffolding,

leaving behind their tools and their paychecks. Relators reason and believe the workers

identified above were illegal immigrant workers ineligible by virtue of their immigration

status to work on a federally funded project. It is understood these individuals have now returned to homes that were out of state or have left the country.

71.     Relators verified these facts and obtained documentation concerning the Hispanic workers and MSI/INC, Final Finishes, and New Concepts. Defendants C & N and Kapp and their subcontractors, for whom they are also responsible under their contracts with Clark County, The Department of Housing and Urban Development and the federal False Claims Act, 31 U.S.C. § 3729 (c), were responsible for keeping accurate records establishing the nature of the work performed, by whom it was performed, when performed, wages paid, fringe benefits paid, applicable Social Security numbers, immigration law compliance, including as to recordkeeping, and recording overtime hours worked and paid.

72.     Defendants C & N and Kapp recklessly failed to make proper inquiry to establish that their subcontractors were in compliance with employment related immigration laws, 8 U.S.C. § 1324(a) and Executive Order 12989 on the Heritage Center Project and that Defendants' subcontractors had performed in compliance with the contract terms and applicable law.

### Failure of subcontractors to register with Ohio Secretary of State

73.     Defendants C & N and Kapp recklessly failed to make proper inquiry to establish that their subcontractors were properly registered to do business within the state of Ohio and had properly registered with the Ohio Secretary of State.

74.     Defendants C & N and Kapp and their subcontractors, agents, or representatives submitted false statements, claims, and records to Clark County government and thus used or caused HUD to use false and fraudulent documents and claims for payment by

24

the United States that included claims and charges for work done by the following subcontractors that failed to register their businesses and maintain as active as required by Ohio law with the Ohio Secretary of State:

> **Final Finishes**
> **MSI/INS**
> **Scarff's Nursery**
> **Osterfield Champion Services, Inc.**
> **The Traditions Group**
> **A 1 Sprinkler**
> **Turner Lighting**
> **New Concepts System, LLC**
> **Federal Rent A Fence**
> **Hemm's Glass Shops**
> **Spraudlin Brothers Welding**
> **The Tradesmen Group**

### Failure to pay appropriate fringe benefits pursuant to the Davis-Bacon Act

75.    As set forth in 29 C.F.R. 523, Subpart B, the applicable Davis-Bacon Act fringe benefit provisions are, in pertinent part, as follows:

> **(b) As used in this Act the term "wages," "scale of wages," "wage rates," "scale of wages," "minimum wages," and "prevailing wages" shall include—**
> **(1) The basic hourly rate of pay; and**
> **(2) The amount of—**
> **(A) The rate of contribution irrevocably made by a contractor or subcontractor to a trustee or to a third person pursuant to a fund, plan, or program; and**
> **(B) The rate of costs to the contractor or subcontractor, which may be reasonably anticipated in providing benefits to laborers and mechanics pursuant to an enforceable commitment to carry out a financially responsible plan or program, which was communicated in writing to the laborers and mechanics affected, for medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, for unemployment benefits, life insurance, disability and sickness insurance, or accident insurance, for vacation and holiday pay, for defraying costs of apprenticeship or other similar programs, or for other bona fide fringe benefits, but only where the contractor or subcontractor is not required by other Federal, State, or local law to provide any of such benefits.**

Here, Defendants did not comply with said requirements, again despite regulatory notice in the CFR.

76.     The basic hourly rate of pay does not include fringe benefits. *29 C.F.R. § 5.29.*

77.     A contractor or subcontractor performing work subject to a Davis-Bacon wage determination may discharge his minimum wage obligations for the payment of both straight time wages and fringe benefits by paying in cash, making payments or incurring costs for "bona fide" fringe benefits of the types listed in the applicable wage determination or otherwise found prevailing by the Secretary of Labor, or by a combination thereof. *29 C.F.R. § 5.31(a).*

78.     Fringe benefits under Davis-Bacon law may not include state workers compensation benefits, payments for worker travel, or subsistence payments. 29 C.F.R. § 5.29(f).

79.     HUD's directives to HUD grantees for investigating willful violations of Davis-Bacon wage requirements state:

> **Davis-Bacon compliance basically involves three factors: 1. the type (classification) of work performed; 2. the number of hours worked; and 3. the prevailing rate for that classification. A fourth factor involves the actual payment of wages either by check or cash. In order to conceal underpayment, a willfully violating employer must falsify the payroll report as it pertains to one or more of these factors. There are four falsification indicators that are easy to detect on payrolls in a "spot check":**
>
> **a. Ratio of laborers to mechanics.**
> Look for excessive use of laborers over mechanics. Generally, there should be no more than one laborer for each mechanic except for landscaping, cement or other paving work. Indicative of: Misclassification. Workers are performing mechanic's duties but are misclassified and paid at lower Laborers' wage rates.
>
> **b. Too few or irregular hours.** Look for employees that never work 40 hours a week; for crews that work in a scattered fashion; for hours reported in tenths or hundredths (e.g., 13.6 hours). Most people are on a 40-hour workweek. Most

crews work together on a job site. Most employers and employees track work hours by whole, half and quarter hours not by tenths or hundredths. Indicative of: Falsification of hours. Actual work hours are reduced to "fit" in a fabricated calculation: (Reduced hours) x (Rate required on wage decision) = Actual gross wages based on lower rate of pay.

**c. Discrepancies in wage computations.** Look for gross wages in "round" numbers (e.g., $700) that don't agree with product of reported hours multiplied by the rate of pay. For example, a payroll showing 20 hours times $33.68 (the rate on the wage decision) and gross wages of $700. (20 hours times $33.68 equals $673.60 not $700.) Indicative of: Piecework or lower (but more "even") hourly rate such as $17.50 (40 hours times $17.50 equals $700). The employer can't make the fabricated calculation "fit" precisely because the Davis-Bacon wage rate is not an even figure.

**d. Extraordinary deductions.** Look for unidentified or disproportionate deductions, for example an employee whose savings account deduction is nearly as much or more than weekly take home pay. Indicative of: Kickbacks or basic underpayment. The employer takes his "cut" from the back end of the computation (after gross earnings) rather than the front end (falsifying the classification, hours or wage rate).

*See http://wwiv.hud.gov/offices/olr/strearnline.cfm* **("Streamlining Davis-Bacon", item 10).**

80.     The actual New Concept workers were not identified on weekly-certified payroll reports.  They were not classified or paid in accordance with wage determinations and did not pay fringe benefits pursuant to the Davis-Bacon Act.

81.     The actual New Concepts workers (allegedly secured from MSI/INC and/or Final Finishes) were part of a structured financial transaction in which New Concepts employed undocumented aliens for drywall labor who were not lawfully permitted to work in the United States.  They were paid low wages and the absence of costs for income taxes, employment taxes, worker's compensation, unemployment insurance, and other benefits paid by legitimate employers allowed New Concepts to underbid fellow subcontractors and gain a significant share of the drywall business in Springfield, Ohio, including the drywall work at the Heritage Center Project.

27

82.     Defendants' contract required that Defendants comply with all applicable

governmental rules and regulation. Defendants agreed to abide by all federal, state and

local laws, rules and regulations, including rules designed to control workplace safety and

provide coverage to employees in the event of a job site accident and then failed to their

contractual obligations.

## Failure to withhold federal, state and city taxes

83.     Defendants C & N and Kapp and their subcontractors, agents, or representatives

submitted false statements, claims, and records to Clark County government and thus

used or caused HUD to use false and fraudulent documents and claims for payment to the

United States that includes claims and charges for work done by the following

subcontractors that failed to withhold federal, state or local taxes:

> **C & N Industrial Contractors, Inc.**
> **Sonitrol of Southwestern Ohio**
> **Hemm Glass Shops**
> **Federal Rent A Fence**
> **Scarff's Nursery, Inc.**

84.     Article 18 of the Contract, provided as follows in § 18.1:

> **"Within ten (10) days of the Notice to Proceed, the Contractor shall
> provide the Department's Prevailing Wage Coordinator a schedule of
> dates during the term of the Contract on which wages will be paid to
> employees for the Project."**

> § 18.2 of the Contract providing:

> **"The Contractor shall submit payroll reports with each Application for
> Payment, which reports shall be certified by the Contractor that the
> payroll is correct and complete and the wage rates shown are not less
> than those required by the Contract.  The Contractor shall be responsible
> for submitting all payroll reports of the Contractor's Subcontractors.**

85.     The Defendants, by and through their officers, agents, employees or

subcontractors knowingly presented or caused to be presented false and improper claims

for payment to the United States Government pursuant to its CBDG and ODOT Grant of funds. The Spanish-speaking New Concept drywall workers (undocumented aliens) were present at the Heritage Center Project construction site for more than three (3) calendar months and Defendants knew or should have known the omission of seven (7) Hispanic workers from the New Concepts weekly certified payroll reports did result in the weekly submission of certified payroll reports which were fraudulent and would constitute a false claim.

86.    Defendants' records made, used, or submitted to the United States were false or fraudulent because Defendants falsely and improperly represented the wages and benefits paid to the workers on the Heritage Center project and falsely and improperly represented compliance with all contractual and legal terms and obligations, including to pay workers in full compliance with local, state, and federal laws, to abide by state and local laws, to comply with the employment-related immigration laws, 8 U.S.C. §1324(a) and Executive Order 12989, and that Defendants' subcontractors had performed in compliance with the contract terms and applicable law.

87.    In seeking payment from the Government, Defendants falsely certified that the payment requested was in accordance with the HUD grant terms and ODOT grant terms when in fact it was not. Defendants C & N and Kapp presented fatally flawed falsified certified payroll reports with accompanying certifications and these resulted in false claims.

88.    The requests for payment submitted by Defendants pursuant to its contract drew on HUD and ODOT grant funds and were paid by the United States Government to the benefit of Defendants.

29

89.     The actions described in this Complaint occurred during a time period in which Defendants C & N and Kapp were receiving Government funds pursuant to a HUD grant and a DOT grant. Defendants C & N and Kapp have failed to ensure distribution of payments inclusive of worker wages made to subcontractors actually reached the workers working on the Heritage Center project.

90.     As a result of the Defendants' misrepresentations, the Government has been damaged and has paid wages that were not paid to the workers instead inuring to those mentioned, *supra*.

91.     §18.2.2 of the Contract provides:

> **"The payroll report shall list the number of hours each employee worked each day on the Project during the reporting period, the total hours each week on the Project, the employee's hourly rate of pay, job classification, fringe benefits and all deductions from wages and net pay."**

92.     Defendants C & N and Kapp were contractually responsible to ensure all subcontractors operating at the Heritage Center Project construction site filed weekly payroll reports indicating the following on each report: employee's name, social security number, job classification, rate of pay, hours worked, fringe benefit payment either to a pre-established fringe benefit account or cash payment of the fringe benefit amount, and any and all other deductions, including state, local and federal tax withholdings. MSI/INS and Final Finishes, and several Subcontractors failed to submit weekly certified payroll reports including, but not limited to, (1) EXPLUS, Inc.; (2) McMullen Engineering; (3) Gates Brothers Glass; (4) Kam Finishes, Turner Lighting, Otis Elevator, and C.I.R.E.S.

> § 18.2.3 of the Contract providing:

> **"The payroll report shall also list each fringe benefit and state if it is paid as cash to the employee or to a named plan."**

93.     Defendants C & N and Kapp failed as General Contractors to supervise the accuracy of the certified documents submitted by them on behalf of their subcontractors to ensure Clark County was receiving accurate and not false records and statements material to the Government's funding and continued payments to Clark County for the work done on the Springfield Heritage Center Project.

94.     Defendants C & N and Kapp were contractually responsible to ensure all subcontractors operating at the Heritage Center construction site filed weekly payroll reports indicating the fringe benefit payment either to a pre-established fringe benefit account or cash payment of the fringe benefit paid to each worker. MSI/INS and Final Finishes, several Subcontractors failed to submit weekly certified payroll reports including, but not limited to, (1) EXPLUS, Inc.; (2) McMullen Engineering; (3) Gates Brothers Glass; (4) Kam Finishes, Turner Lighting, Otis Elevator, and C.I.R.E.S.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729(a)(1)(A)

95.     Relators incorporate the preceding allegations as if fully restated herein as to this specific claim.

96.     Defendants' C & N and Kapp's subcontractors employed on the HUD/DOT partially funded Project were not in compliance with federal, state, and local laws and regulations as pled *supra*.

97.     Defendants intentionally concealed known violations of existing federal, state and local laws, rules and regulations including rules designed to control workplace safety and provide coverage to employees in the event of a job site accident.

31

98.    **Workers Compensation:** Defendants  C & N and Kapp  knowingly or with reckless disregard for the truth submitted false statements, claims, and records to Clark County and thus used or caused Clark County to use false and fraudulent documents and claims for payment to the United States that included claims and charges for work done by the following subcontractors that failed to maintain active coverage for their employees under the Ohio Bureau of Worker's Compensation:

> **Cires Electrical**
> **Explus, Inc.**
> **A1 Sprinkler**
> **Turner Lighting**
> **MSI/INS**
> **Final Finishes**
> **New Concepts**
> **Hemm Glass**
> **Osterfield Champion**
> **The Tradesmen Group**
> **Scarff's Nursery**

99.    **Payroll Tax Withholding:** Defendants  C& N and Kapp knowingly or with reckless disregard for the truth submitted false statements, claims, and records to Clark County and thus used or caused Clark County to use false and fraudulent documents and claims for payment to the United States that included claims and charges for work done by the following subcontractors that failed to abide by federal, state, and local laws regarding withholding of taxes and failed to withhold federal, state, and local payroll taxes.

100.    **Registration to Do Business:** Defendants C & N and Kapp knowingly or with reckless disregard for the truth submitted false statements, claims, and records to Clark County and thus used or caused Clark County to use false and fraudulent documents and claims for payment to the United States that included claims and charges for work done

by the following subcontractors that failed to register their businesses and maintain as

active as required by Ohio law with the Ohio Secretary of State:

> **Final Finishes**
> **MSI/INS**
> **Scarff's Nursery**
> **Osterfield Champion Services, Inc.**
> **The Traditions Group**
> **A 1 Sprinkler**
> **Turner Lighting**
> **New Concepts System, LLC**
> **Federal Rent A Fence**
> **Hemm's Glass Shops**
> **Spraudlin Brothers Welding**
> **The Tradesmen Group**

101.    Defendants C & N and Kapp knowingly or with reckless disregard for the truth

submitted false statements, claims, and records to Clark County and thus used or caused

Clark County to use false and fraudulent documents and claims for payment to the United

States that included claims and charges for work done by subcontractors that failed to

fulfill their obligations to abide by local, state, and federal law in doing business and

paying wage and benefits, including payment of workers compensation and payroll taxes,

as required by the contract terms, federal law, and HUD grant requirements.

102.    At all times relevant, Defendants C & N and Kapp made, used, submitted or

caused to be submitted various false records and statements material to the Government's

funding and continued payments to Clark County for the work done on the Springfield

Heritage Center Project.

103.    Defendants knowingly violated 31 U.S.C. 3729(a)(1)-(3) by falsely certifying to

Clark County that Defendants and their subcontractors performed their work in accord

with applicable law and by submitting to Clark County payment requests and weekly

certified payroll reports that were false or fraudulent because they were based upon work

done by subcontractors in violation of the contract terms, federal law, and HUD grant requirements.

## SECOND CAUSE OF ACTION
### FALSE CLAIMS ACT, 31 USC § 3729(a)(1)(A)
### Davis-Bacon Act and Contract Work Hours and Safety Standards Act

104.    Relators incorporate the preceding allegations as if fully restated here as to this specific claim.

105.    Many of Defendants' C & N and Kapp's and these Defendants' subcontractors' employees were not paid Davis-Bacon Act prevailing wages. Instead they were paid less than the prevailing wage, including some who were paid as subcontractors to a subcontractor at rates slightly above the state minimum wage.  Several subcontractors, including New Concepts and MSI/INS failed to pay any Davis-Bacon Act benefits.

106.    Defendants paid or caused to be paid, through other subcontractors, such as New Concepts, MSI/INS and Final Finishes and their respective employees, to do the Drywall work on the interior of the Heritage Center Project.  These subcontractors, in turn, paid wages far below Davis-Bacon Act prevailing wages, paid no amount for Davis-Bacon qualifying benefits to the carpenters and laborers performing the drywall work, and failed to pay time-and-one-half for all hours worked in excess of 40 hours weekly.

107.    New Concepts was determined by the Prevailing Wage Coordinator to have misclassified one or more of its workers as a laborer, when in fact he was doing drywall. Relators investigated the payments made to employees sent to New Concepts by MSI/INS and Final Finishes and as a result, learned that **Clemente Gonzalez, Juan Vazquez , Julian Vasquez , Guillermo Olivera, Walter Sorto, Pascual Villa**

**and Manuel Rodriguez** were collectively due $35,461.77 for drywall work they had done at the Heritage Center project.

108.    Defendants C & N and Kapp failed to ensure that all subcontractors with laborers or skilled craftsmen on their payroll submitted weekly certified payroll reports. MSI/INS, Final Finishes, EXPLUS, Inc., McMullen Engineering; Gates Brothers Glass, Kam Finishes, Turner Lighting, Otis Elevator, and C.I.R.E.S did not submit weekly payroll reports with the required certification by their employer to ensure (1) that Davis-Bacon wage rates including fringe benefits were paid; (2) that federal, state and local withholdings were properly deducted; (3) that classifications for each employee were accurate, and (4) that no unauthorized deductions were made from the employees hourly wage for travel expenses, etc.

109.    Defendants C & N and Kapp were aware of the presence of undocumented and ineligible workers employed at the Springfield Heritage Center Project, knew that their subcontractors were employing such workers in violation of law and contract terms, and nonetheless submitted or caused to be submitted false claims for payment to the United States for the work done by the ineligible workers and their employers.

110.    At all times relevant, Defendants C& N and Kapp made, used, submitted or caused to be submitted various false records and statements material to the Government's funding and continued payments to Clark County for the work done on the Springfield Heritage Center Project, including, but not limited to submitting claims that were false and fraudulent because they were submitted in violation of the material contract and grant requirements that all subcontractors on the job abide by applicable law and comply with the federal law, including 8 U.S.C. § 1324a making it unlawful for an employer to

employ an individual who is an alien not authorized to work in the United States, whether directly or pursuant to contract or subcontract, and Executive Order 12989 of February 13, 1996, prohibiting the employment of aliens not authorized to work in the United States on federally-funded projects.

111.     Defendants knowingly violated 31 U.S.C. § 3729(a)(1) - (3) by falsely certifying to Clark County that Defendants and their subcontractors performed their work in accordance with applicable law and by submitting to Clark County payment requests that were false or fraudulent because they falsely claimed that the work done by Defendants and their subcontractors were conformity with laws prohibiting the employment of undocumented aliens not authorized to work on the Springfield Heritage Center project.

### PRAYER FOR RELIEF

**WHEREFORE**, Relators, on behalf of themselves and the United States Government, pursuant to 31 U.S.C. §3730(c)(5) and (d) pray as follows:

(a)     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's actions, plus a civil penalty of $5,500 - $11,000 for each action in violation of 31 U.S.C. §3729 and as adjusted upward by law, and the costs and expenses of this action, with interest, including the costs to the United States Government for its expenses related to this action;

(b)     That if this action proceeds or the United States Government proceeds with any alternate remedy that Relators be awarded an amount the Court decides is reasonable for collecting the civil penalty and damages, between 15% and 30% of the proceeds of this action and the alternate remedy or the settlement of any such claim;

36

(c)    That the United States Government and Relators receive all relief from Defendants, both at law and at equity, to which they may reasonably appear entitled, including all litigation costs and reasonable attorneys' fees incurred as provided pursuant to 31 U.S.C. § 3730(h) and other applicable law;

(d)    That the Court enter a permanent injunction prohibiting the future award of federally funded contracts for the next 5 years to each of the Defendants and their subcontractors who have failed and refused to conduct work in accord with contract and subcontract terms and applicable law and/or alternatively that the Court order a binding Corporate Integrity Agreement be entered into between the DOJ, HUD and DOT and these Defendants requiring same or similar sanctions;

(e)    That the Court compel a complete accounting from Defendants;

(f)    That the Court award reasonable attorneys' fees, costs, and expenses incurred by the federal government and Relators; and

(g)    Such further relief as the Court deems just and proper.

(e)    For such further relief as the Court deems just and proper.

Respectfully submitted,

**MEDICOLEGAL CONSULTANTS, LLC**
**ATTORNEYS AND COUNSELORS AT LAW**

/s/ C. William Hinnant, Jr.

C. William Hinnant, Jr., Esq.
Pro Hac Vice Motion pending
112 Essex Drive
Anderson, SC 29621
(864) 226-6132, Facsimile: 864-226-2320
bhinnant@doctorlawyers.com

**GAMIERE AND ASSOCIATES, LPA**
**ATTORNEYS AND COUNSELORS AT LAW**

/s Dorothy Gamiere

Dorothy Gamiere, Esq. Oh Reg.# 0013779
27000 Lakeshore Boulevard
Euclid, Ohio 44132
(216) 289-3366
dgamiere@aol.com

**Attorneys for Relators**

## CERTIFICATE OF SERVICE

I, **Amelia Nelson**, an employee of the firm Medicolegal Consultants, LLC, hereby certify that a copy of the foregoing Relators' Complaint and Jury Demand was served upon the following counsel, this _____, of _____, 2010 as indicated below:

*Via Certified Mail*
Gegory Lockhart, U.S. Attorney
Attn: Andrew M. Malek,
Assistant U.S. Attorney
United States Attorney's Office
303 Marconi Boulevard
Suite 200
Columbus, OH 43215
Phone: 614-469-5715
Fax: 614-469-2200
**Counsel for United States**

*Via Certified Mail*
Attorney General Eric Holder, Esq.
Attn: Joyce Branda, Esq.
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 261
Washington, DC 20004
Phone: 202-514-7900
Fax: 202-307-3852
*joyce.branda@usdoj. gov*
**Counsel for United States**